UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

NANCY CUSSON,

        Plaintiff,

v.                                                 Case No. 1:11-cv-00087-SPM/GRJ

ILLUMINATIONS I, INC., a Florida
corporation,

        Defendant.
_____/

## ORDER

Pending before the Court is Plaintiff's Verified Motion For Attorneys' Fees And Litigation Expenses And Costs (Doc. 53) to which Defendant has filed a memorandum in response and in opposition to Plaintiff's motion. (Doc. 57.) Pursuant to the agreement of the parties this matter has been referred to the undersigned to determine the amount of attorney's fees, litigation expenses and costs to be awarded to Plaintiff's counsel and for entry of final judgment thereon. (Docs. 46 & 47.)

### I. Introduction

This case was initiated by Plaintiff pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* alleging that architectural barriers exist at the Defendant's property,[1] which prevent disabled persons from equally using and enjoying the goods and services offered at the premises. This case is one of six

---

[1] The property involved in this case is located at 618 NW 60th Street, Gainesville, Florida, which is commonly referred to as "McAllisters Plaza."

other ADA cases, filed on the same date by the same plaintiff and the same attorney, in the Northern District of Florida.[2]

This case was filed on May 6, 2011 and within several months the Defendant tentatively agreed to cure any ADA violations. In furtherance of Defendant's agreement to remedy ADA violations, the Defendant retained David Goldfarb of ADA Compliance Specialists, Inc. – who was Plaintiff's expert – to inspect the property and provide a report of ADA violations. Mr. Goldfarb inspected the premises on August 11, 2011[3] and transmitted his report to Defendant on or around October 6, 2011.  The parties entered into a consent decree on February 8, 2012 in which Defendant agreed to correct the ADA violations and agreed that Plaintiff was entitled to reasonable attorney's fees, expenses and costs. The only issue not resolved was the amount of reasonable attorney's fees to be awarded to Plaintiff's counsel.

Plaintiff seeks a total of $30,092.50 in attorney's fees, $1,005.32 in litigation expenses and a final re-inspection fee of $350.00. In support of the reasonableness of this amount, Plaintiff submitted an expert affidavit by Thomas B. Bacon, an attorney with experience in representing Plaintiffs in ADA cases, who opines that the hourly rate of $350.00 is within the prevailing market rate and that the hours expended by Plaintiff's counsel were reasonable and necessary.

---

[2] *See, Cusson v. General Growth Properties, Inc.*, No. 1:11-cv-00084-SPM-GRJ (N.D. Fla. Filed May 6, 2011); *Cusson v S. Clark Butler Properties Land Trust*, No. 1:11-cv-00085-MP-GRJ (N.D. Fla. Filed May 6, 20122); *Cusson v. Newberry SC Company, Ltd.,* No. 1:11-cv-00086-SPM-GRJ (N.D. Fla. Filed May 6, 2011); *Cusson v Coalition Partnership*, No. 1:11-cv-00088-SPM-GRJ (N.D. Fla. Filed May 6, 2011); and *Cusson v. Natha Govan, Inc.*, No. 1:11-cv-00089-SPM-GRJ (N.D. Fla. Filed May 6, 2011). Each of these cases has been dismissed pursuant to a settlement between the parties.

[3] Plaintiff's counsel traveled to Gainesville from South Florida to personally attend the inspection. Defendant contends that Plaintiff's counsel should not be compensated for the travel time because it was not necessary that Plaintiff's counsel personally attend the inspection.

In opposition to the Plaintiff's position, Defendant has submitted the affidavit of Gary Edinger, who opines that a reasonable hourly rate in the Northern District of Florida is in the range of $250.00 to $300.00 per hour and that a reasonable hourly rate for the services of Plaintiff's counsel is $295.00 per hour. Mr. Edinger further opines that a reasonable fee for Plaintiff's counsel is $15,000.00 inclusive of litigation costs.

## II. **DISCUSSION**

**A.    The Lodestar**

In the Eleventh Circuit, *Norman v. Housing Authority of City of Montgomery*[4] prescribes the law for determining the appropriate award of attorney's fees.  First, the Court must multiply the number of hours reasonably expended by a reasonable hourly rate under what is known as the "lodestar" approach.[5]  After determining the "lodestar", the Court may adjust the amount depending upon a number of factors, including the quality of the results.[6]  As the fee applicant, Plaintiff "bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.

   *1.    Reasonable Hourly Rate*

The first part of the lodestar analysis is to determine the reasonable hourly rate for the hours for which the fee applicant is seeking attorney's fees.  A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by

---

[4] 836 F.2d 1292 (11th Cir. 1988).

[5] *Id*. at 1299, 1302.

[6] *Id*. at 1302.

lawyers of reasonably comparable skills, experience, and reputation."[7] The fee applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates in the relevant community.[8] Satisfactory evidence consists of more than the affidavit of the attorney who performed the work.[9] The Eleventh Circuit has recognized that the Court itself is an expert with regard to the hourly rates charged in the local community.[10]

Here, the Plaintiff is represented by Cynthia Mitchell, an attorney located in West Palm Beach, who has approximately ten years experience in ADA cases of the type involved in this case. Ms. Mitchell requests an hourly rate of $325.00 for all work performed. Defendant contends that a lower hourly rate should apply because the case was routine and because the reasonable hourly rate in the Gainesville Division of the Northern District of Florida is lower than the rate charged in the South Florida market where Ms. Mitchell is located.

In determining the appropriate hourly rate, the Court must first determine whether the Court should use the Northern District of Florida – where the case was filed – or the rates charged in the other federal district courts in Florida as the relevant legal market.

---

[7] *Norman*, 836 F.2d at 1299.

[8] *Id*.

[9] Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994)(quoting *Norman*, 836 F.2d at 1299).

[10] *Norman*, 836 F.2d at 1303.

The general rule is that the appropriate hourly rate is determined by the legal market where the lawsuit is filed.[11] If a party wants to recover non-local rates of an attorney who is not from the place in which the case was filed, he "must show a lack of attorneys practicing in that place who are willing and able to handle his claims."[12]

Plaintiff argues that the relevant legal community for determining the prevailing market rates should include not only the Northern District of Florida but the Middle and Southern Districts of Florida because there are only a handful of Plaintiff's Title III ADA attorneys in the Northern District. While Plaintiff is correct that the vast majority of Title III cases are filed in the Middle and Southern District of Florida by attorneys almost exclusively located in South Florida that does not resolve the issue because of the atypical nature of the attorney-client relationship in most Title III ADA cases. In the vast majority of Title III ADA cases the test plaintiff does not seek out legal counsel after the plaintiff is the victim of discrimination. Rather, the lawyer becomes involved in the case before a claim is even identified. The lawyer and test plaintiff work together, typically filing multiples cases at the same time involving premises located in proximity to each other. That is what happened here. The Plaintiff in this case filed five other cases on the same date involving premises, all of which are located in close proximity to the others in the Gainesville area. Thus, in contrast to a typical case where an individual must seek out counsel after the individual's rights have been violated, the Title III ADA test plaintiff already has secured legal counsel before the violation is discovered and

---

[11] *Cullens v. Ga. Dept. Of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

[12] *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999).

before the premises have even been visited. Consequently, an out of area attorney becomes involved in the case because of the special relationship between the Plaintiff and counsel and not because there is a paucity of local lawyers qualified to represent the Plaintiff. Carried to its logical extreme, if the relevant market was the market in which the attorney regularly practices, a test plaintiff, like here, could involve counsel from New York, Los Angeles, Chicago or Boston without justification where the hourly rates are significantly higher than even most areas in Florida.

The rationale for involving out of area counsel is to obtain specialized expertise for the case. That rationale standing alone, however, is not a sufficient reason to apply non-local rates. The reason is because "[A] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate."[13] In the instant case, the two reasons a non-local attorney was used to represent Plaintiff is because of the expertise of Plaintiff's counsel in Title III ADA cases and because of the special joint venture relationship between Plaintiff, as the tester, and Plaintiff's counsel. While these reasons explain why non-local counsel was retained these reasons do not meet Plaintiff's burden of demonstrating that the Court should apply non-local rates in determining a reasonable hourly rate. The Court therefore concludes that the market rate to be applied is the hourly rate charged in the North Central Florida legal market by someone with expertise in the area who is willing and able to take the case.

---

[13] *Id.* at 437.

According to Mr. Edinger, Defendant's expert on attorney's fees, the going rate in the Northern District of Florida for routine ADA cases is $250.00 to $300.00 per hour. Mr. Edinger opines that taking into account the expertise of Plaintiff's counsel and consistent with other awards in these types of ADA cases that a reasonable hourly rate is $295.00 per hour. The Court agrees that this rate is consistent with the Court's own experience with the rates charged in Gainesville and the North Central Florida legal market.

Moreover, even if the Court had applied non-local rates, as urged by Plaintiff, a review of the rates awarded in other ADA cases in the Middle and Southern Districts of Florida – including cases in which Plaintiff's counsel was involved – are consistent with an award of $295.00 per hour.[14]

### 2. *Reasonable Number of Hours*

The second step in determining the lodestar is to assess the reasonable number of hours expended.[15] The fee applicant bears the burden of documenting the appropriate number of hours.[16] Proof of the hours dedicated to the litigation and any corresponding objections must be made with sufficient specificity.[17] The Court should exclude hours that are: (1) excessive or otherwise unnecessary; (2) redundant; and (3)

---

[14] *See, Access for the Disabled, Inc. v. Pettineo*, No. 08-61200-CIV-Altonaga-Brown, at *3 (S.D. Fla. Sept. 10, 2009)(Court found that $295.00 per hour was reasonable rate in an ADA case in which Ms. Mitchell requested an award based upon a rate of $325.00 per hour); *Fox v The Marquis Corp.*, No. 08-81264-CIV, 2010 WL 1010871, at *3 (S.D. Fla. March 15, 2010)(Ms. Mitchell awarded hourly rate of $295.00 in ADA case); *Fox v Cohen Ventures, LLC*, No. 08-81052-CIV, 2009 WL 1393348 (S.D. Fla. May 15, 2009)(Ms. Mitchell awarded $295.00 per hour in ADA case).

[15] *Norman*, 836 F.2d at 1302.

[16] *Id. at 1303.*

[17] *Id.* at 1301.

spent on discrete and unsuccessful claims.[18] A lawyer requesting fees is required to exercise billing judgment. Consequently, "a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights."[19]

Here, Plaintiff's counsel has requested an award of attorney's fees for 100.9 hours of work performed in connection with this matter. Included in this request is 82.9 hour for legal work and 18 hours for travel time.

Describing the case as "cookie cutter" in nature, Defendant argues that the Court should reduce the fee request by 50% because the case was not complicated and was one of five other virtually identical cases filed in this court on the same day. While the Court agrees that the case was not complicated – and appears to be similar to many Title III ADA cases filed in this district and the other federal districts in Florida – the Court, nonetheless, concludes that a wholesale across the board reduction in the fee request is not appropriate. Rather, the Court should evaluate the specific time entries and determine on an item by item basis whether any time should be excluded for inefficiency, redundancy or because the time was not reasonable and necessary.

   *a. Travel Time*

One of the larger blocks of time requested by Plaintiff's counsel is 18 hours for travel time to and from Gainesville, Florida. Included in the requested travel time is travel to and from Gainesville to conduct a pre-suit investigation and then travel time to

---

[18] Id. at 1301-02.

[19] Id. at 1301.

and from Gainesville, Florida to attend the ADA expert's inspection of the premises. While Ms. Mitchell requests a reduced fee of $175.00 per hour for travel time, there is a fundamental problem with awarding travel time in a case like this. Ms. Mitchell is located in West Palm Beach, Florida and as discussed above her involvement in the case is because of the joint venture relationship between the test Plaintiff and Ms. Mitchell and not because there was not a competent attorney located in the North Central Florida area. To be sure, as disclosed in the affidavit of Defendant's expert, there are attorneys in North Central Florida who are competent to handle ADA cases, including a state wide law firm with offices in Ocala, Florida.[20] Ocala is located approximately 35 miles from Gainesville and thus the Plaintiff could have retained counsel locally to handle this case if she had chosen to do so. Generally, billing for travel time is only appropriate if a plaintiff demonstrates that there was no competent local attorney who could have handled the matter.[21] Plaintiff has failed to do so and therefore the travel time of Plaintiff's counsel – even at the reduced billing rate – is not compensable.

Additionally, the Court is of the view that it was not reasonable and necessary for Plaintiff's counsel to travel to the premises with the ADA expert for the inspection. As such, even if travel time was compensable, because it was unnecessary to travel to attend the inspection by the expert, any travel time to accomplish that task would not a proper exercise of billing judgment. Accordingly, the Court concludes that 18 hours of

---

[20] Doc. 57-2, Edinger affidavit ¶15.A.

[21] *Nitram, Inc. V. Indus. Risk Insurers,* 154 F.R.D. 274, 277 (M.D. Fla. 1994).

travel time at the rate of $175.00 per hour for total sum of $3,150.00 will be deducted from the total award.

### b. Unnecessary and Excessive Time

This case was one of six virtually identical cases filed by Plaintiff on the same day in this Court. The complaints in each of the cases were identical. It is therefore reasonable to assume that there would be efficiencies in billing in each of the cases. Specifically, Plaintiff requests a total of 3.7 hours for performing online searches on March 30, 2011. While it is reasonable to conduct online searches regarding the premisses before filing suit to identify the owner of the property and whether other ADA suits had been filed against the property, the conduct of the search does not need to be performed by an attorney and expending 3.7 hours is clearly excessive and should be reduced to .5 hours.[22] This time entry, therefore, will be reduced by 3.2 hours to .5 hours.

In addition, the Plaintiff is requesting 7.1 hours for researching, drafting and revising a motion to strike affirmative defenses. The problem is that the time spent researching and preparing a motion to strike Defendant's affirmative defenses proved to be completely unnecessary because Plaintiff's counsel had not even discussed the motion with defense counsel. As it turns out when Plaintiff's counsel did, Defendant agreed to withdraw the affirmative defenses ultimately resulting in the filing of a notice by Defendant striking the affirmative defenses. Doc. 11. The 7.1 hours requested for preparing the motion should be deducted.

---

[22] *See, Fox v. The Marquis Corp.*, No. 08-81264-CIV, 2010 WL 1010871, at *5 (S.D. Fla. March 15, 2010)("The Court believes these computerized searches should not have taken more than 0.5 hours.")

There are also unnecessary and excessive charges for phone calls in which Plaintiff's counsel either left a message or briefly talked with an assistant about an administrative issue. These charges are not reasonable and normally a client would not be charged for placing a phone call where only a message was left. These calls total 2.1 hours and should be reduced to at most .6 hours.

The Court also finds that the 7.5 hours requested by counsel for researching, drafting and revising the verified motion for fees is excessive particularly in view of the fact that Ms. Mitchell has been involved in numerous fee petitions in virtually identical cases in which the same challenges and legal issues were raised. Accordingly, the Court concludes that the 7.5 hours requested should be reduced to 3.5 hours.

Plaintiff's counsel also requests a total of 4.7 hours for preparation and e-filing of time records. While the local rules for this district require counsel to file time records on a monthly basis the task of doing so is purely a clerical task and does not require that a lawyer do so. Accordingly, because reimbursement for time performing secretarial tasks is generally not compensable (at least not at attorney rates) the 4.7 hours should be deducted from the fee award.[23]

Plaintiff also requests 3.7 hours for researching and calling various ADA experts on September 29 and 30, 2011. At this point in time the property already had been inspected by the ADA expert chosen by Plaintiff and Defendant already had committed to making the ADA repairs. There is no explanation in the billing entries and therefore

---

[23] *See, For Play Ltd.v Bow to Stern Maint. Inc.*, 2006 WL 3662339 (S.D. Fla. 2006)(attorney not entitled to compensation for secretarial or clerical work).

the Court concludes that this time is not compensable because Plaintiff has failed to demonstrate the necessity for this charge.

Lastly, Plaintiff requests 2.7 hours for preparing a boilerplate consent decree. The consent decree is a standard form, which should not have required this amount of time to prepare. Accordingly, the time should be reduced to 1.0 hour.

In sum, the Court concludes that an award of reasonable attorney's fees in this case is the sum of $16,815.00, representing 57 hours of attorney time[24] multiplied by an hourly rate of $295.00.

### 3. *Adjustment of the Lodestar*

Having determined both components of the lodestar, the Court still must consider whether an adjustment to the lodestar should be made for the results obtained.[25] Plaintiff's counsel does not request a multiplier and the Court concludes that there is no reason to reduce the lodestar particularly in view of the fact that the case resulted in the removal of the architectural barriers to the disabled identified by Plaintiff.

## B. Litigation Expenses And Costs

Plaintiff seeks recovery of litigation expenses in the amount of $1,005.32, consisting of: $350.00 filing fee; $50.00 fee for service of process; $556.92 for mileage reimbursement for travel and $48.40 for turnpike tolls for travel.

---

[24] The sum of 57 hours is derived by deducting from the total request of 82.9 hours the following: 3.2 hours for online searches; 7.1 hours for preparing the motion to strike; 1.5 hours for unnecessary phone calls; 4 hours for preparing the fee petition; 4.7 hours for efiling; 3.7 hours for the telephoning and researching ADA experts after the inspection was completed; and 1.7 hours for preparing the consent decree. The Court also excluded all 18 hours of travel time, which Plaintiff requested at a rate of $175.00 per hour.

[25] *Norman*, 836 F.2d at 1302.

As discussed above, the Court has concluded that Plaintiff is not entitled to recover fees for travel because travel by an out of area attorney was neither necessary nor reasonable and therefore Plaintiff is not entitled to travel expenses. Plaintiff is, however, entitled to recover the filing fee and the fee for service of process.

Lastly, Plaintiff requests $350.00 to cover the cost of re-inspecting the property to ensure that all of the agreed upon ADA modifications have been completed. In Defendant's response Defendant does not challenge the request for a reinspection fee and accordingly the Court will include in the award the $350.00 reinspection fee.

### III. CONCLUSION

Accordingly, upon due consideration, it is **ORDERED**:

1. Plaintiff's Verified Motion For Attorneys' Fees And Litigation Expenses And Costs (Doc. 53) is **GRANTED** to the extent detailed in this order.

2. Plaintiff is awarded the sum of $16,815.00 for reasonable attorney's fees and the sum of $750.00 for costs and litigation expenses for a total award in the sum of $17,565.00, which sum shall be due and payable within the time limits set forth in the consent decree entered into between the parties.

3. The Clerk is directed to enter a final judgment for fees and costs and close the file.

**DONE AND ORDERED** in Gainesville, Florida this 7th day of January 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge